# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSEPH GUGLIELMO, on behalf of    )
himself and all others similarly situated,    )  Case No.: 1:20-cv-05376
    )
        Plaintiff,    )
    )
   vs.    )
    )
    )
JEGS AUTOMOTIVE, INC.,    )
    )
        Defendant(s)    )
    )

## **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(b)(2)**

**STEIN SAKS, PLLC**

*/s/ Kenneth Willard*
Kenneth Willard, Esq.
285 Passaic Street
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
kwillard@SteinSaksLegal.com

# TABLE OF CONTENTS

Table of Authorities ………………………………………………….......   iii

I.   Introduction …………………………………………….……….   1

II.   Factual Background ……………………………………………......   2

III.   Procedural Background……………………………………………   5

IV.   Standard of Review ………………………………………………..   5

V.   Legal Argument ……………………………………………………   6

    A.   THIS COURT HAS PERSONAL JURISDICTION UNDER
        NEW YORK'S LONG-ARM STATUTE UNDER § 302(a)(1) …..   6

        i.   Defendant JEGS Purposefully Avails Itself of the
            Privileges and Benefits of New York Law by Purposefully
            Directing Business Activity to New York State, and
            Fulfilling Orders to New York Customers…………………   6

            a.   Plaintiff's Failed Attempts to Make Purchases on a
                Website which Purposefully Avails Itself of the
                Privileges and Benefits of Doing Business in New
                York Establishes "Business Activity" …………………   9

            b.   Defendant JEGS Conducts Substantial Commercial
                Activity and Reaps Substantial Revenue from New
                York Customers, Sufficient to Establish Business
                Activity in New York ………………………………….   11

        ii.   The Business Activity Conducted by Defendant JEGS in
            New York State Is Substantially Related to Plaintiff's ADA
            and NYCHRL Claims ………………………………………   13

            a.   Plaintiff's Failed Attempts to Make Purchases on the
                Website Demonstrate Discrimination under the ADA
                And NYCHRL, Showing an Articulable Nexus to
                Those Claims …………………………………………   15

            b.   The Substantial Revenue Generated from New York
                Customers Is Substantially Related to Plaintiff's ADA
                and NYCHRL Claims because they Demonstrate
                Unequal Access and because Plaintiff Used the Same

i

Website Functions ……………………………………… 16

B. FINDING PERSONAL JURISDICTION OVER DEFENDANT
JEGS COMPORTS WITH DUE PROCESS ……………………… 19

C. HAVING FOUND PERSONAL JURISDICTION OVER
PLAINTIFF'S ADA CLAIM, SUPPLEMENTAL JURISDICTION
OVER PLAINTIFF'S NYCHRL CLAIM IS APPROPRIATE ….… 22

D. PLAINTIFF REQUESTS LEAVE TO AMEND……………………… 24

VI. CONCLUSION ……………………………………………………. 25

**Table of Authorities**

**Supreme Court Opinions**

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) .................................................... 20

**Second Circuit Opinions**

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ............................................... 25

*Assam v. Deer Park Spring Water*,
    163 F.R.D. 400 (E.D.N.Y. 1995) ............................................... 24

*Averbach v. Cairo Amman Bank*,
    No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902
    (S.D.N.Y. Jan. 21, 2020) ............................................... 22

*Aviles v. S&P Glob., Inc.*,
    380 F. Supp. 3d 221 (S.D.N.Y. 2019) ............................................... 16, 21

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ............................................... 8, 20

*Brown v. Web.com Grp., Inc.*,
    57 F. Supp. 3d 345 (S.D.N.Y. 2014) ............................................... 8, 13

*Buck Constr., LLC v. Murray Corp.*,
    No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858
    (N.D.N.Y. Sep. 8, 2017) ............................................... 13, 21

*Camacho v. Vanderbilt Univ.*,
    2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ....................................... 9, 10, 17, 18, 19, 21

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ............................................... 7, 13

*DeMarco v. Ben Krupinski Gen. Contractor, Inc.*,
    No. 12-CV-0573 (SJF)(ARL), 2014 U.S. Dist. LEXIS 100793
    (E.D.N.Y. July 22, 2014) ............................................... 2

*Fica Frio, Ltd. v. Seinfeld*,
    434 F. Supp. 3d 80 (S.D.N.Y. 2020) ............................................... 24

*Hanly v. Powell Goldstein, L.L.P.*,
    290 F. App'x 435 (2d Cir. 2008) ............................................... 24

*HSH Nordbank AG N.Y. Branch v. Street*,
    2012 U.S. Dist. LEXIS 99830 (S.D.N.Y. July 18, 2012) ............................................... 21

*Ingenito v. Riri USA, Inc.*,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) ............................................... 14, 15, 17

*Kreisler v. Second Ave. Diner Corp.*,
   2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. Sep. 10, 2012) ........................... 23-24

*Licci v. Lebanese Canadian Bank*,
   732 F.3d 161 (2d Cir. 2013) .......................................................... 7, 16, 19, 20, 22

*Lott v. CoreOne Techs., LLC*,
   No. 14-CV-5848 (CM), 2016 U.S. Dist. LEXIS 13674
   (S.D.N.Y. Feb. 2, 2016) ........................................................................... 23

*Manning v. Erhardt + Leimer Inc.*,
   No. 17CV348V, 2018 U.S. Dist. LEXIS 68065 (W.D.N.Y. Apr. 20, 2018) ...................... 23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ........................................................................ 20

*Nettis v. Levitt*,
   241 F.3d 186 (2d Cir. 2001) ....................................................................... 25

*Obabueki v. IBM*,
   99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810
   (S.D.N.Y. Aug. 14, 2001) ........................................................................... 9

*Rosa v. 600 Broadway Partners, LLC*,
   175 F. Supp. 3d 191 (S.D.N.Y. 2016) ............................................................. 17

*Rubin v. City of N.Y.*,
   2007 U.S. Dist. LEXIS 23003 (S.D.N.Y. Mar. 29, 2007) ........................................ 15

*State." Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015) ..................................................................... 7-8

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   2003 U.S. Dist. LEXIS 7869 (S.D.N.Y. May 9, 2003) ........................................ 5, 6, 13

*Thomas Publ'g Co. v. Indus. Quick Search*,
   237 F. Supp. 2d 489 (S.D.N.Y. 2002) .......................................................... 15, 18

*Two's Co. v. Hudson*,
   No. 13-cv-3338-NSR, 2014 U.S. Dist. LEXIS 30028
   (S.D.N.Y. Mar. 6, 2014) ........................................................................... 12

**Federal Court Opinions**

*Cottle v. W. Skyways, Inc.*,
   No. 1:17-cv-00049-DAD-BAM, 2017 U.S. Dist. LEXIS 59203
   (E.D. Cal. Apr. 17, 2017) ........................................................................... 2

**United States Code**
   42 U.S.C. § 12181 ................................................................................... 5

**State Cases**

*Indosuez Int'l Fin. B.V. v. Nat'l Res. Bank*,

98 N.Y.2d 238, 746 N.Y.S.2d 631, 774 N.E.2d 696 (2002) .............................................................. 11

*Licci v. Lebanese Can. Bank, SAL*,
   2012 NY Slip Op 7854, 20 N.Y.3d 327, 960 N.Y.S.2d 695, 984 N.E.2d 893 ............................. 10-11

*Rushaid v. Pictet & Cie*,
   2016 NY Slip Op 07834, 28 N.Y.3d 316, 45 N.Y.S.3d 276, 68 N.E.3d 1 .................................... 14, 15

**State Statutes**
   N.Y. C.P.L.R. § 302 .............................................................................................................. 6, 7, 8, 14

**Rules**
   FED. R. CIV. P. 12 ..................................................................................................................... 1, 2, 5
   Fed.R.Evid. 201(b) ............................................................................................................................ 2

## I.      <u>INTRODUCTION</u>

Defendant JEGS Automotive, Inc. ("JEGS") moves to dismiss this Complaint under Rule 12(b)(2) of the Fed.R.Civ.P. for lack of personal jurisdiction.  Defendant bases its motion on several arguments, none of which have any merit considering that JEGS is one of the premier automotive parts suppliers with customers around the world and moves more than $300 million in merchandise every year.  An integral part of its business is its presence on the internet.  Its website, https://www.jegs.com/, specifically contemplates purchases in New York.  Plaintiff has alleged that New York customers with sight ability specifically make purchases from its website, and Plaintiff was denied a similar experience as a blind person, in violation of the American with Disabilities Act ("ADA").  These facts demonstrate not only that Defendant JEGS has purposefully availed itself of the protection and benefits of New York law, but that the business activity conducted bears a substantial relationship to Plaintiff's discrimination claims under the ADA.  Plaintiff has established a substantial relationship on two grounds: Plaintiff tried, and failed, to purchase products offered on the Website, and Plaintiff's discrimination case under the ADA hinges on the discrepancy between customers who successfully purchased parts and products in New York versus the failure of same by Plaintiff due to his disability.  In other words, Plaintiff's discrimination claim relies on a direct comparison with the business activity that is routinely conducted in New York with sighted persons, who, because of their eyesight, are actually able to purchase the products.  Additionally, the Web Content Accessibility Guidelines ("WCAG 2.1"), which establish the industry norm for compliance with the ADA, were likewise missing from all web-based transactions with sighted persons in New York.

For substantially the same reasons, Plaintiff has established that Due Process concerns under the United States Constitution are satisfied.  Because of the substantial amount of business

activity that is purposefully directed toward New York, and which Defendant routinely engages in, JEGS could have reasonably been expected to be haled into New York court.

## II.   **FACTUAL BACKGROUND**

Defendant is an automotive parts and accessories retailer that owns and operates a website, https://www.jegs.com/ ("Website").  Doc # 1, ⸿ 21.  Not only does the Website allow unfettered public access to Defendant's goods and services, which are made available for purchase throughout the world, including New York State, but Defendant also ensures delivery of the products purchased on its website, including those goods shipped to New York State.  *See Id.* at ⸿ 21.  The Website specifically contemplates purchases by customers located in New York City by offering guidance on New York sales tax, charging New York sales tax for such purchases made in New York, and providing a downloadable tax form for New York state purchases.  *See* https://helpcenter.jegs.com/hc/en-us/articles/360053581714-Sales-Tax, last visited October 16, 2020, attached hereto as Ex. A (stating that Defendant JEGS's charges New York sales tax on all purchases of goods made in the State of New York); *see also* https://www.jegs.com/taxforms/new_york.pdf, last visited October 16, 2020, attached hereto as Ex. B (providing a downloadable sales tax form ST-120, New York State and Local Sales and Use Tax Resale Certificate).[1]

---

[1] "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). It is appropriate for courts to take judicial notice of websites indicating that companies hold themselves out in a certain commercial manner to the public. *See Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG)(VVP), 2011 U.S. Dist. LEXIS 51330, *145-*146 (E.D.N.Y. Jan. 4, 2011)(taking judicial notice of defendant company websites indicating that "they hold themselves out as global service providers who serve United States markets" and have "global operations and operate[] in the United States, including in New York."); *see also DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, No. 12-CV-0573 (SJF)(ARL), 2014 U.S. Dist. LEXIS 100793, at *15 (E.D.N.Y. July 22, 2014)(the court taking

As the Website states,

> The laws around charging sales tax for products have been evolving rapidly; due to a recent Supreme Court Decision, we must charge sales tax in your state. JEGS will collect sales/use tax only for invoices generated on and after October 1st 2018. All invoices from prior periods will not be affected.
>
> States that are currently being charged Sales Tax are below. Click on any state below to view the tax-exempt forms for that state:
>
> …
>
> New York
>
> …

*See* Ex. A. Moreover, Defendant JEGS derives a significant amount of revenue from their website, including New York state. *See* Doc # 1, ⁋⁋ 21, 39. The true size of JEGS's business is demonstrated by statements made on the website:

> JEGS sends millions of parts a year to customers across the globe.
>
> "I ran the thing for 27 years and then sold it to them and they've since increased annual sales from about $20 million-a-year to a several hundred million-a-year." ~ Jeg Coughlin Sr.
>
> These days, more than 400 associates are now employed by JEGS…
>
> Through the years, JEGS graduated from the small speed shop on 11th Avenue, which is still serving customers, to a 85,000 square-foot facility that eventually

---

judicial notice of the statements made by a lawyer on his website that "he is either a solo practitioner or the principal of a small law firm and emphasizes that he is 'Commercial Dispute Lawyer,' a 'Personal Injury Law Firm,' a 'Trial Attorney' and a 'Vehicle Accident Lawyer.'"); *see also Cottle v. W. Skyways, Inc.*, No. 1:17-cv-00049-DAD-BAM, 2017 U.S. Dist. LEXIS 59203, at *11 fn. 2 (E.D. Cal. Apr. 17, 2017)("The court takes judicial notice of the website pages submitted as exhibits by plaintiffs.")(citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014)("Proper subjects of judicial notice when ruling on a motion to dismiss include … publicly accessible websites."); *Caldwell v. Caldwell*, No. 05-4166, 2006 U.S. Dist. LEXIS 13688, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006). Plaintiff asks this Court to take judicial notice of Defendant JEGS's website demonstrating that it charges sales tax on all New York purchases and provides a downloadable New York sales tax form. Defendant JEGS cannot reasonably challenge the authenticity of those statements as it is chiefly responsible for authoring them and/or approved their use.

gave way to a massive state-of-the-art world headquarters and distribution center in the Columbus suburb of Delaware, Ohio.

https://teamjegs.com/jegs-101/, last visited October 16, 2020, attached hereto as Ex. C,[2] and

JEGS High Performance has become a giant in the industry with one retail store, two call centers, and a massive distribution warehouse that delivers more than $300 million worth of products to automobile enthusiasts each year.

https://teamjegs.com/jegs-is/, last visited October 16, 2020, attached hereto as Ex. D.[3]

The Website is not configured to meet the demands of users who are disabled due to blindness. *See* Doc # 1, ⁋ 24, 29. Specifically, the Website does not meet the widely recognized industry standard WCAG 2.1, as evidenced by the lack of embedded source code that would assist the blind in being able to effectively navigate the Website to make purchases. *See Id.* at ⁋⁋ 24-29 (giving as examples missing alt. text, missing label elements or titles, duplicative title elements, and broken hyperlinks). As a result of these barriers, Plaintiff, who is visually impaired and legally blind, was unable to make purchases of the goods offered on the Website. *Id.* at ⁋⁋ 24, 29, 32. Plaintiff made multiple attempts to purchase goods offered for sale on the Website, but each time, due to these access barriers and his disability, was unable to do so. *Id.* at ⁋ 24. The last time Plaintiff made an attempt was in July 2020. *Id.*

Plaintiff's experience in unsuccessfully navigating the Website and being unable to purchase its products stands in stark contrast to non-disabled customers located in New York. *See* Doc # 1, at ⁋ 24 ("Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from being able to determine what specific products were offered for

---

[2] Plaintiff asks the Court to take judicial notice of this website in accordance with the principles laid out in footnote 2, which is incorporated by reference here. *See supra*, 2-3, fn. 2.
[3] Plaintiff asks the Court to take judicial notice of this website in accordance with the principles laid out in footnote 2, which is incorporated by reference here. *See supra*, 2-3, fn. 2.

sale."); *see also Id.* at ⁋ 29 ("These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do."); *see also Id.* at 30-32; *see* Ex. A (showing that JEGS imposes New York State sales tax on all purchases made in New York).  Those individuals had no trouble at all navigating the Website and making purchases, as evidenced by the substantial amount of revenue generated by the Website and the purchases necessarily made from, and delivered to, customers in New York.  *See Id.* at ⁋⁋ 21, 24, 29-32; *see also* Ex. D ("JEGS High Performance has become a giant in the industry with one retail store, two call centers, and a massive distribution warehouse that delivers more than $300 million worth of products to automobile enthusiasts each year."); *see also* Ex. A (showing that JEGS imposes New York State sales tax on all purchases made in New York).

## III.   PROCEDURAL BACKGROUND

On July 13, 2020, Plaintiff filed the Complaint alleging violations of the ADA, 42 U.S.C. § 12181 *et seq.*, and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL").  Prior to conducting any discovery in this case, Defendant JEGS filed a motion to dismiss under Rule 12(b)(2) arguing that Plaintiff lacks personal jurisdiction.  *See* Doc Nos. 13-14.  Plaintiff herewith responds.

## IV.   STANDARD OF REVIEW

"A motion to dismiss under Rule 12 must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2003 U.S. Dist. LEXIS 7869, at *22-*23 (S.D.N.Y. May 9, 2003)(quoting *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 334 (S.D.N.Y. 2000)(internal citation omitted))(internal quotations omitted).  "Where, as here, jurisdiction is challenged prior to discovery, plaintiffs may defeat a motion to dismiss by pleading in good faith … legally

sufficient allegations of jurisdiction." *Teachers' Ret. Sys.*, 2003 U.S. Dist. LEXIS 7869, at \*23 (quoting *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)(internal citation omitted))(internal quotations omitted).  Until an evidentiary hearing is held, a plaintiff need only make a *prima facie* showing that jurisdiction exists through pleadings and affidavits. 2003 U.S. Dist. LEXIS 7869, at \*23 (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).  The reviewing court must construe these pleadings and affidavits in a light most favorable to the plaintiff, and where any doubt exists, resolve it in the plaintiff's favor.  *Id.* at \*23 (citing *CutCo Industries, Inc.*, 806 F.2d at 365 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985))).  Additionally, a court reviewing a jurisdictional motion such as this may consider evidence outside the pleadings without converting it to a motion for summary judgment under Rule 56.  *Id.* at \*23-\*23 (citing *Am. Prop. Consultants v. Walden Lisle Assocs. Ltd. Pshp.*, 95 Civ. 329 (KMW), 1997 U.S. Dist. LEXIS 9984, at \*12 (S.D.N.Y. July 10, 1997)).  As with a motion to dismiss, however, legal assertions couched as factual allegations are not entitled to the presumption of truth.  *Id.* at \*24 (citing *Cornell v. Assicurazioni Generali S.p.A.*, 97 Civ. 2262 (MBM), 2000 U.S. Dist. LEXIS 11004, at \*5 (S.D.N.Y. Aug. 2, 2000)).

## V.   LEGAL ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE UNDER § 302(a)(1)

This Court has personal jurisdiction of the case because Defendant JEGS has availed itself of the privilege and benefits of New York laws by conducting business activity that is purposefully directed at New York, and which is substantially related to Plaintiff's ADA and NYCHRL claims.

### i.  Defendant JEGS Purposefully Avails Itself of the Privileges and Benefits of New York Law by Purposefully Directing Business Activity to New York State, and Fulfilling Orders to New York Customers

Defendant claims that Plaintiff has averred *no* facts establishing business activity, and yet, as Defendant's website demonstrates, Defendant conducts over $300 million worth of business worldwide, including the State of New York.  This business is not merely incidental either.  Defendant purposefully directs its activities to New York, and conducts a substantial amount of business there, as evidenced by tax forms on the website showing that it charges New York State tax on all New York purchases.  All of these extra-pleading facts are corroborated by allegations in the Complaint, and establish a substantial amount of business activity that is purposefully directed to New York State.

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary … who … transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)(quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  This is a "single act statute," *i.e.* "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195 (N.Y. 1988)).  "Purposeful activities" are defined as "those with which a defendant, through volitional acts, avails itself of the privileges of conducting activities within the forum State."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)(quoting *Fischbarg v.*

7

*Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26, 849 N.Y.S.2d 501 (N.Y. 2007)); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-247 (2d Cir. 2007)("With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity – "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'")(quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958))).

"A defendant's internet contacts may establish jurisdiction under § 302(a)(1), depending on the 'nature and quality' of commercial activity that a defendant conducts." *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 357 (S.D.N.Y. 2014)(citing *Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577, at *8 (S.D.N.Y. June 10, 2005); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224, at *7 (S.D.N.Y. June 27, 2003); *Best Van Lines*, 490 F.3d at 251)). "However, courts in the Southern District 'have identified a spectrum of potential website contacts with a forum state, ranging from "passive" websites, which merely display information and therefore are unlikely to support jurisdiction, to websites which clearly allow defendant to transact business in the forum state over the internet, and thus sustain jurisdiction.'" *Brown*, 57 F. Supp. 3d at 357 (quoting *Knight-McConnell*, 2005 U.S. Dist. LEXIS 11577, at *8 (internal citations omitted)). In the middle are "websites that are 'interactive insofar as [they] permit[] the exchange of information' and may subject a defendant to personal jurisdiction, depending on 'the level and nature of the exchange.'" 57 F. Supp. 3d at 357.

With that said, "[a] 'transaction' of business under this section does not require an exchange of money, goods or services, or the formation of a contract. Rather, a range of

'purposeful' activity is considered by the courts, and the ultimate determination is based on the 'totality of the circumstances.'" *Obabueki v. IBM*, 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810, at *8 (S.D.N.Y. Aug. 14, 2001)(citations omitted).  "Such activity may include the solicitation of business by the defendants, contract negotiations between the parties, meetings at which the defendants were present, or letters sent and phone calls made by the defendants to the plaintiffs."  *Obabueki*, 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810, at *8 (citation omitted).

### a.  Plaintiff's Failed Attempts to Make Purchases on a Website which Purposefully Avails Itself of the Privileges and Benefits of Doing Business in New York Establishes "Business Activity"

Plaintiff's failed attempts to make purchases on the Website constitutes "business activity" within the middle spectrum of interactive websites given the fact that the Website additionally purposefully avails itself of New York law by providing guidance and downloadable tax forms regarding New York State sales tax.  In other words, not even considering the volume of commercial activity in New York alone, the Website could be said to fall in that middle spectrum of activity where interaction with New York web users is considered enough to confer personal jurisdiction given the level of information exchanged.

A court in this District has found business activity in New York involving an ADA claim, like this one, based on even weaker facts.  In *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019), the plaintiff interacted with a financial aid calculator that was on the defendant university's website, allowing prospective students to estimate the amount of financial aid they would be eligible to receive if they attended the school.  *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *16 ("Plaintiff does, however, make specific allegations that he attempted to access — and was denied access to — other portions of the Website, including the page which hosted the net price calculator.").  The plaintiff never alleged

that student loans were actually paid online in New York, but the court found the attempted access of the financial aid calculator sufficient on its own to constitute purposeful business activity in New York considering the additional allegation, construed most favorably to the plaintiff, that the university had purposefully availed itself of the privileges of doing business in New York by conducting recruiting events in New York where potential students had been directed to the website as a recruitment tool.  2019 U.S. Dist. LEXIS 209202 at *17-*19.

Setting aside for a moment the substantial amount of commercial activity conducted online in New York, Plaintiff's failed attempts to make purchases the website presents an even stronger case of an interactive website than *Camacho* did.  Like the plaintiff in *Camacho* who could not use the financial aid calculator, Plaintiff has alleged failed attempts to make purchases on the Website.  However, Plaintiff has provided an additional key piece of evidence that was missing in *Camacho*.  *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *17 ("The Second Amended Complaint *contains no explicit allegation that portions of the Website are targeted specifically at New York resident*s, as opposed to the general population.")(emphasis added). Here, by contrast, Defendants have purposefully availed themselves of the privilege of doing business in New York by deliberately demonstrating the impacts of specifically doing business there: they impose New York state sales tax on all goods purchased over the Website by customers in New York; they provide helpful guidance as to the tax consequences of purchases made over the Website in New York, and they provide a downloadable sales tax form.  *See* Ex. A (providing guidance on state sales tax consequences for New York customers and explaining that Defendant JEGS imposes state sales tax on all purchases made over the Website in New York); *see also* Ex. B (copy of the ST-120 tax form, New York State and Local Sales and Use Tax Resale Certificate); *see also Licci v. Lebanese Can. Bank, SAL*, 2012 NY Slip Op 7854, 20

N.Y.3d 327, 339, 960 N.Y.S.2d 695, 984 N.E.2d 893 ("Nonetheless, complaints alleging a

foreign bank's repeated use of a correspondent account in New York on behalf of a client – in

effect, a 'course of dealing' – show purposeful availment of New York's dependable and

transparent banking system, *the dollar as a stable and fungible currency, and the predictable*

*jurisdictional and commercial law of New York and the United States.*")(citations

omitted)(emphasis added); *see also Indosuez Int'l Fin. B.V. v. Nat'l Res. Bank*, 98 N.Y.2d 238,

245, 746 N.Y.S.2d 631, 774 N.E.2d 696 (2002)("The parties' choice of New York law in 10 of

the 14 confirmations and choice of the New York forum in at least six of the confirmations,

*reflects their reliance on this state's experience with and ability to ensure orderly dollar*

*currency transactions.* Thus, by virtue of the nature of the transactions and the parties' own

choices, New York has the paramount interest in the enforceability of the

transactions.")(emphasis added).  So too here.  The posting of sales tax guidance and imposition

of sales tax for all New York purchases shows reliance on the certainty and stability of New

York State law specifically with regard to retail transactions.  By invoking those laws, Defendant

JEGS was necessarily purposefully directing business activity there.

    Therefore, considering the Website as purely interactive given Plaintiff's failed attempts

to purchase goods online (where, by virtue of Plaintiff's disability, transactions were not

consummated), the additional fact that JEGS posts guidance on New York State sales tax,

including downloadable sales tax forms, shows purposeful availment.  This is sufficient to

establish "business activity" in New York even though, strictly speaking, no transactions ever

took place.

### b.  Defendant JEGS Conducts Substantial Commercial Activity and Reaps Substantial Revenue from New York Customers, Sufficient to Establish Business Activity in New York

More saliently, however, Plaintiff has established that Defendants conduct a substantial amount of business in the State of New York by sheer volume alone on the Website.  In other words, they routinely conduct transactions over the internet with sighted customers in New York, and ship goods to those customers in New York.  This is more than enough to demonstrate substantial business activity purposefully directed at New York.  In this respect, the Website is more than just an interactive website, it falls on the closest end of the spectrum of website where courts routinely find personal jurisdiction because they allow goods and services to be purchased directly from the website.

Courts have time and again recognized that transactions of goods and services is sufficient "business activity" under the first jurisdictional prong of § 302(a)(1).  *See Two's Co.*, No. 13-cv-3338-NSR, 2014 U.S. Dist. LEXIS 30028, at *12 (citing cases).  It is widely recognized that websites which allow purchases of goods and services to be made directly online fall on the closest end of the spectrum where courts routinely find personal jurisdiction.  *See e.g. Two's Co. v. Hudson*, No. 13-cv-3338-NSR, 2014 U.S. Dist. LEXIS 30028, at *12 (S.D.N.Y. Mar. 6, 2014)("On the other end are websites that are fully interactive, such as in Chloé, where consumers can access the site from anywhere and purchase products. Such websites are commercial and courts will generally confer jurisdiction over the defendant based on the website.")

 Here, Plaintiff has alleged that Defendant JEGS does a substantial amount of business in New York and generates a substantial amount of revenue from those transactions on the Website.  *See* Doc # 1, ⁋ 21, 39; *see also* Ex. C (explaining that a "small speed shop on 11th Avenue" … "eventually gave way to a massive state-of-the-art world headquarters and distribution center in the Columbus suburb of Delaware, Ohio."); *see also* Ex. D (explaining that "a massive

distribution warehouse [] delivers more than $300 million worth of products to automobile enthusiasts each year."); *see also* Ex. A (showing that a portion of the $300 million in annual revenue generated by Defendant JEGS is attributable to website purchases in New York, because the Website explains that JEGS imposes New York State tax on all purchases made from New York).

It is of course widely recognized that New York's long-arm statute is a "single act statute," *i.e.* "proof of one transaction in New York is sufficient to invoke jurisdiction… ." *See Chloe*, 616 F.3d at 170.  However, Plaintiff here has done much more.  He has provided evidence of an undiminished volume of business that is directed toward New York State, transacted online, which results in the shipment of goods to multiple New York customers on an annual basis.  *See e.g. Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014)("As described by Plaintiff, Defendant is one of the largest internet companies in the United States for web pages and web page services and raises a great deal of its gross revenue from New York customers."); *see also Buck Constr., LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858, at *13 (N.D.N.Y. Sep. 8, 2017)("In this case, it is undeniable that Defendant runs an interstate business that knowingly ships its products to New York. Indeed, Defendant admits to $1,894,395.00 in sales and 1,755 individual shipments to New York since 2010.").  This puts the Website on par with those cases where transactions of goods and services over the internet is sufficient to constitute a *prima facie* showing of "business activity."[4]

### ii.  The Business Activity Conducted by Defendant JEGS in New York State Is Substantially Related to Plaintiff's ADA and NYCHRL Claims

---

[4] The emphasis here is on *prima facie* showing.  On a motion to dismiss prior to a trial being held on the issue, all Plaintiff has to do is make a *prima facie* showing of personal jurisdiction.  *See Teachers' Ret. Sys.*, 2003 U.S. Dist. LEXIS 7869, at *23.  Plaintiff has done exactly that by making allegations, which, when paired with Defendant JEGS's statements and downloadable tax forms found on the Website, establish the necessary business activity.

The business activity is substantially related to the claims of this case on the one hand because Plaintiff's failed attempts to make purchases on the Website are the *sine qua non* of any discrimination claim under ADA and NYCHRL based on a noncompliant website.  Without the failure, there would be no discrimination.  Moreover, the substantial amount of commercial activity that is conducted with nondisabled persons in New York is necessarily intertwined with Plaintiff's failure to do same because of his disability, thus establishing one of the necessary elements of Plaintiff's ADA and NYCHRL claims.  Additionally, Plaintiff attempted to use the same interactive portions of the Website to purchase products as nondisabled persons do who successfully made purchases in New York.  For all of these reasons, Plaintiff's claims are substantially related to the business activity occurring in New York, whether the website is considered as merely an interactive one without a consummated transaction by Plaintiff, or whether it is considered highly interactive given the substantial volume of business conducted with nondisabled persons in New York.

"To satisfy the second prong of CPLR 302 (a) (1) that the cause of action arise from the contacts with New York, there must be an '"articulable nexus" … or "substantial relationship" … between the business transaction and the claim asserted'"  *Rushaid v. Pictet & Cie*, 2016 NY Slip Op 07834, 28 N.Y.3d 316, 329, 45 N.Y.S.3d 276, 68 N.E.3d 1 (quoting *Licci*, 20 NY3d at 339); *see also Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015)(citing *Best Van Lines*, 490 F.3d at 246; *Licci III*, 20 N.Y.3d at 339).  "This inquiry is 'relatively permissive.'"  *Rushaid*, 28 N.Y.3d at 329 (internal citations and quotations omitted).  Neither does this require a causal link, "but merely 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'"  28 N.Y.3d at 329 (citing *Licci*, 20 NY3d at 339).  "'[W]here at least one

element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute."  *Ingenito*, 89 F. Supp. 3d at 477 (quoting *Licci III*, 20 N.Y.3d at 341).  "The claim need only be 'in some way arguably connected to the transaction.'"  *Rushaid*, 28 N.Y.3d at 329 (quoting *Licci*, 20 NY3d at 340).

> ### a.  Plaintiff's Failed Attempts to Make Purchases on the Website Demonstrate Discrimination under the ADA and NYCHRL, Showing an Articulable Nexus to Those Claims

Here, even considering the website as merely an interactive one in the middle of the spectrum given Plaintiff's failure to consummate a transaction, those failed attempts are nevertheless substantially related to Plaintiff's ADA and NYCHRL claims – because they clearly establish discrimination.

Courts have found business activity substantially related to a plaintiff's claim where the use of the website alone constitutes the basis for the claim.  *See Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002)("the cause of action for infringement arises directly out of the transaction of business, to wit, the use of an allegedly infringing website."); *see also Rubin v. City of N.Y.*, 2007 U.S. Dist. LEXIS 23003, at *10 (S.D.N.Y. Mar. 29, 2007)("In the case at bar, there is an 'articulable nexus' between Rubin's request for declaratory relief, the City's counterclaim for trademark infringement, and Rubin's online internet business because Rubin transacted business with New York residents over an 'active' website where customers from New York purchased allegedly infringing merchandise.").

Here, there is no question that the asserted basis for Plaintiff's claim is the discrimination involved in Plaintiff's failure, by virtue of his disability, to purchase goods on the Website.  This is consistent with those state court cases which have found an "articulable nexus" where the use of facilities in New York, such as banks, for example, to reroute funds in a fraudulent scheme,

played in an integral part in that scheme.  *See Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221,

262 (S.D.N.Y. 2019)("Here, Lifetrade allegedly used New York's banking channels to acquire

investor cash and to route those funds to Smith and his entities under the guise of commissions

and fees. These New York channels, in other words, formed an integral part of the architecture of

the self-enrichment scheme that left Lifetrade with insufficient liquidity to save its investors'

money by paying off its debts rather than surrendering its assets.")(citations omitted); *see also

Licci*, 732 F.3d at 168 ("[T]he use of a New York correspondent bank account, standing alone,

may be considered a 'transaction of business' under the long-arm statute if the defendant's use of

the correspondent account was purposeful.")(citing *Licci III*, 20 N.Y.3d at 338-39, 984 N.E.2d at

899-900, 960 N.Y.S.2d at 701-02).

      As established above, there is no question that Defendant JEGS's utilization of internet

transactions in the New York was purposeful because Defendant takes the affirmative step of

imposing state sales tax on all New York purchases and provides guidance on New York state

sales tax laws, including a downloadable tax form.  This is without doubt purposeful.  Moreover,

the use of the internet plays an integral part in Plaintiff's ADA and NYCHRL claims because the

claims are based entirely on Defendant JEGS's failure to follow industry standards in making the

Website ADA-compliant, thus resulting in unequal access.

### b.  The Substantial Revenue Generated from New York Customers Is Substantially Related to Plaintiff's ADA and NYCHRL Claims because they Demonstrate Unequal Access and because Plaintiff Used the Same Website Functions

      However, the substantial amount of revenue generated from New York customers every

year cannot be ignored.  This commercial activity is substantially related to Plaintiff's ADA and

NYCHRL claims for two reasons.  First, the commercial activity demonstrates unequal access

because Plaintiff was unable to enjoy the same experience as a blind-disabled person.

Additionally, Plaintiff made use of the same functions on the Website in his failed bid to make purchases as nondisabled customers did.

It is already well established that "'where at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute." *Ingenito*, 89 F. Supp. 3d at 477 (quoting *Licci III*, 20 N.Y.3d at 341). The primary element of any ADA and NYCHRL claim is unequal access. *See Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198-99 (S.D.N.Y. 2016)(citing to *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008))("To state a claim under Title III, [Plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) *that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide.*")(emphasis added). This necessarily entails a comparison of the disabled person's experience with that of a nondisabled person in being denied "a full and equal opportunity to enjoy the services defendants provide." Thus, the underlying predicate of "a full and equal opportunity to enjoy the services defendants provide" can only be proven by showing that nondisabled persons were actually able to consummate transactions on the Website by virtue of their not being disabled, whereas Plaintiff was not able to because of his disability. The inescapable conclusion is that the commercial activity with nondisabled persons in New York is substantially related to Plaintiff's discrimination claims.

With regard to the second reason, *Camacho* again provides the relevant standard. The court in that case noted that it could not consider the online payment of student loans in New York as commercial activity because the plaintiff had not alleged it. 2019 U.S. Dist. LEXIS 209202 at *14. Additionally, "Plaintiff has not claimed that he tried to access the pages of

Defendant's website that would allow him to pay tuition.6Link to the text of the note

Consequently, Plaintiff has not alleged that he was denied access to the portions of the Website

through which commercial activity is transacted." *Id.* at *15.  Had the plaintiff made those

allegations, the court necessarily implied that the plaintiff would have been successful in

establishing an articulable nexus between the commercial activity conducted with nondisabled

persons and the plaintiff's denial of same due to his disability.  But that is exactly what Plaintiff

has done here.  *See* Doc # 1, at ¶¶ 24, 29.

> One court put it best when it remarked

> It appears appropriate to observe that given today's internet reach and capabilities,
> IQS is also subject to personal jurisdiction here under § 302(a)(1) because it, by
> the internet, also transacts business in New York. "It has long been observed that
> HN6 technological advances affecting the nature of commerce require the
> doctrine of personal jurisdiction to adapt and evolve along with those advances."
> *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 565 (S.D.N.Y. 2000).
> IQS's website, www.industrialquicksearch.com, gives users the option to submit
> company listings, track product areas, and submit e-mails directly to IQS's sales
> department. It is true that the "use of the internet has been analogized to an
> advertisement in a nationally-available magazine or newspaper, and does not
> without more justify the exercise of jurisdiction over the defendant." *Id.*  In this
> regard, IQS stresses that if personal jurisdiction is appropriate based on its
> website, it will unfairly be subject to personal jurisdiction in every state.  This
> argument is unavailing, for technological advances enable IQS to transact
> business in every state via an interactive website, where those in the state can
> communicate directly via its internet route back to IQS. With that ability,
> however, comes the responsibility for actionable conduct. IQS's presence in New
> York, by way of an interactive website, is more closely akin to actual physical
> presence in New York than it is to running an advertisement in a national
> magazine. If IQS wishes to operate an interactive website accessible in New
> York, there is no inequity in subjecting IQS to personal jurisdiction here. If IQS
> does not want its website to subject it to personal jurisdiction here, it is free to set
> up a "passive" website that does not enable IQS to transact business in New York.
> Having decided to create an interactive website that enables it to transact business
> in New York, IQS is subject to personal jurisdiction here under CPLR § 302(a)(1)
> because the cause of action for infringement arises directly out of the transaction
> of business, to wit, the use of an allegedly infringing website.

*Thomas Publ'g Co.*, 237 F. Supp. 2d at 491-492.

Many of those arguments the defendant made in that case are echoed here.  Defendant

claims that it would be unfairly haled in a far-off forum.  If that is so, then it should not have

utilized the benefits of an interactive website where purchases can be made, and where those

very purchases involve discrimination due to the inherently unequal access those New York

customers have.  By making the Website interactive rather than passive, Defendant JEGS was

subjecting itself to New York laws, and cannot now be heard to object in mock horror.  Just like

*Thomas Publ'g Co.*, the Website is infringing by dint of its failure to include WCAG 2.1-

compliant embedded code, directly impacting Plaintiff's ability to purchase goods and products

on the Website, and directly implicating Plaintiff's equal access claims under the ADA and

NYCHRL by virtue of the transactions that were consummated by non-disabled customers in

New York.  An infringing website by dint of its use, and the business with New York customers

derived therefrom, should not be saved from litigation on personal jurisdiction grounds.

### B.  FINDING PERSONAL JURISDICTION OVER DEFENDANT JEGS COMPORTS WITH DUE PROCESS

Exercising personal jurisdiction over Defendant JEGS comports with the Due Process

Clause of the U.S. Constitution.  Given the substantial amount of business that Defendant JEGS

does in New York over the Website, and given the fact that JEGS purposefully directed business

activities in New York, it could have reasonably been expected to be haled in New York court.

After finding personal jurisdiction appropriate, a court must then determine whether

exercising personal jurisdiction comports with due process under the U.S. Constitution.  *Licci*,

732 F.3d at 168 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed.

95 (1945))); *Camacho*, 2019 U.S. Dist. LEXIS 209202 at *8 (citing *Licci*, 732 F.3d at 168).

"Due process considerations require that the defendant have certain minimum contacts with the

forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 169 (internal citations omitted).

The Due Process analysis is a two-step process. *Licci*, 732 F.3d at 170. First, the court "evaluate[s] the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Best Van Lines*, 490 F.3d at 242 (citations and internal quotation marks omitted). "Where the claim arises out of, or relates to, the defendant's contacts with the forum – i.e., specific jurisdiction [is asserted] – minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci*, 732 F.3d at 170(quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)(internal quotation marks omitted).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Relevant factors include "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)(internal citations and quotations omitted).

"[T]he Second Circuit has noted that it would be the 'rare' case where personal jurisdiction was proper under New York's long-arm statute but not under a due process

analysis." *Camacho*, 2019 U.S. Dist. LEXIS 209202 at *9 (citing *Eades*, 799 F.3d at 168); *see also Aviles*, 380 F. Supp. 3d at 264 ("Where, as here, a court takes jurisdiction over a defendant under New York's long-arm statute on the basis of the defendant's in-state transaction of business, the requirements of due process are typically satisfied."); *see also HSH Nordbank AG N.Y. Branch v. Street*, 2012 U.S. Dist. LEXIS 99830, at *14, fn. 3 (S.D.N.Y. July 18, 2012)("[T]he personal jurisdiction analysis under [N.Y. C.P.L.R.] § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous … .").

Having found that personal jurisdiction is appropriate under either theory that Defendant JEGS engages in a substantial amount of online commercial activity with customers in New York, or that it purposefully directed business activity assuming the Website is a purely interactive one (given that Plaintiff, due to his blindness, was never able transact business with Defendant JEGS), then due process is also satisfied.  On the first theory, courts have found due process consideration satisfied under similar circumstances.  *See Buck Constr.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858, at *13 (N.D.N.Y. Sep. 8, 2017)("In this case, it is undeniable that Defendant runs an interstate business that knowingly ships its products to New York. Indeed, Defendant admits to $1,894,395.00 in sales and 1,755 individual shipments to New York since 2010.").  The court concluded, "Although Defendant argues that its New York sales and shipments represent just a tiny fraction of its overall numbers, i.e., 2.78% of total revenue and 2.68% of total shipments, Defendant is clearly aware that its products enter New York and are being used in New York."  The same is true here where, although Defendant may argue that its New York internet business is a tiny fraction of its $300 million in annual revenue, Defendant JEGS is nevertheless aware that it ships products to New York.

21

Moreover, even if the Website were merely considered interactive, the repeated use of the internet's web portals and the selection of New York to do business there, as evidenced by downloadable sales tax forms for New York State, as well as the admission that it imposes sales tax on all New York purchases and the helpful sales tax guidance that the Website provides, is sufficient to find due process satisfied.  *See Licci*, 732 F.3d at 171 ("the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress, constitutes 'purposeful [] avail[ment] … of the privilege of doing business in New York.'"); *see also Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, at *27 (S.D.N.Y. Jan. 21, 2020)("CAB's 'selection and repeated use of New York's banking system' to allegedly assist Hamas constitutes purposeful availment sufficient to permit the assertion of specific jurisdiction in keeping with the Constitution's due process protections.")(quoting *Licci*, 732 F.3d at 171).

Moreover, exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice.  "'[M]odern communication and transportation ease' any burden the defense of this case in New York might impose."  *Averbach*, No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, at *27 (citing *Licci IV*, 732 F.3d at 173-74 (quoting *Robertson-Ceco Corp.*, 84 F.3d at 574).  And like *Licci*, where the court found that "the federal and state governments had an 'interest in monitoring banks and banking activity to ensure that its system is not used as an instrument in support of terrorism[,]'" *see* 732 F.3d at 173-74, New York has an interest in enforcing the state laws with regard to the commercial activity that is conducted here. The fact that it takes place over the internet does not change its interests.

## C.  HAVING FOUND PERSONAL JURISDICTION OVER PLAINTIFF'S ADA CLAIM, SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NYCHRL CLAIM IS APPROPRIATE

Having established that imposing personal jurisdiction is appropriate under New York's long-arm statute and does not offend traditional notions of fair play and substantial justice, the Court therefore has supplemental jurisdiction over Plaintiff's NYCHRL claims.

Generally, a court has discretion to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Manning v. Erhardt + Leimer Inc.*, No. 17CV348V, 2018 U.S. Dist. LEXIS 68065, at *25 (W.D.N.Y. Apr. 20, 2018)(citing 28 U.S.C. § 1367(c)). "If 'all claims over which [this Court] has original jurisdiction' are dismissed, the supplemental state law claims should be dismissed as well." *Manning*, No. 17CV348V, 2018 U.S. Dist. LEXIS 68065, at *25 (quoting *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); 28 U.S.C. § 1367(c)(3)). The Court "needs to consider 'at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims[.]'"

Here, Plaintiff has established multiple theories under which it is appropriate for this Court to impose personal jurisdiction over Defendant JEGS. Given the fact that personal jurisdiction is appropriate, it would also therefore be appropriate, in consideration of judicial economy, fairness and comity, for this Court to retain pendent jurisdiction over Plaintiff's NYCHRL claims as well. *See e.g. Lott v. CoreOne Techs., LLC*, No. 14-CV-5848 (CM), 2016 U.S. Dist. LEXIS 13674, at *50-*51 (S.D.N.Y. Feb. 2, 2016)(denying in part Defendant's motion for summary judgment, and therefore granting in part Plaintiff's request for supplemental jurisdiction); *see also Kreisler v. Second Ave. Diner Corp.*, 2012 U.S. Dist. LEXIS 129298, at *14 (S.D.N.Y. Sep. 10, 2012)("The Court has jurisdiction over [the plaintiff's Title III ADA claims, 42 U.S.C. § 12181 *et seq.*] pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over [the plaintiff's NYCHRL claims, N.Y.C. Admin. Code § 8-107(4)(a), and New

York State Human Rights Law claims, N.Y. Exec. L. § 296(2)(a)] pursuant to 28 U.S.C. § 1367(a).").

Given that Plaintiff's NYCHRL claims arise from the same common nucleus of operative fact, it is appropriate for this Court to exercise supplemental jurisdiction over the NYCHRL claims. *See Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 90 (S.D.N.Y. 2020)("Provided that the other requirements of Section 302(a) (3) are met with regard to these claims, such that European Collectibles is properly before the Court, the Court may entertain Seinfeld's other causes of action because they derive from the same nucleus of operative fact."); *see also Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 438 (2d Cir. 2008) ("[O]nce a defendant properly is brought before a district court on a claim covered by Section 302(a) (3), the court may entertain claims that are not expressly covered by the long-arm statute, so long as they derive from the same nucleus of operative fact as claims that are.").

### D.  PLAINTIFF REQUESTS LEAVE TO AMEND

Plaintiff has requested this Court take judicial notice of a series of statements made by Defendant JEGs on the Website.  These statements, and the evidentiary proof the Website provides in general, are needed to establish a *prima facie* case of personal jurisdiction.  In the event that the Court deems the allegations of the Complaint to be deficient without explicitly incorporating these statements, or such other evidence as the Court might deem necessary to establish a *prima facie* case of personal jurisdiction, Plaintiff requests leave to amend the Complaint.

"To sustain its right to amend the complaint, the plaintiff does not have to prove all the elements of the proposed claim; it is sufficient if plaintiff demonstrates there is some plausible basis in the record to support these claims." *Assam v. Deer Park Spring Water*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995)(internal citations and quotations omitted).  "[L]eave to amend should be

freely granted when 'justice so requires.'" *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001)(citing *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999)(quoting Fed. R. Civ. P. 15(a))).  "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

Based on the information presented here, and especially the attached exhibits, Plaintiff has established a prima facie showing of personal jurisdiction, and should be allowed to amend the Complaint if the allegations do not suffice in themselves without incorporating the facts here presented, or other facts as necessary.  There has been no delay or bad faith here on the part of Plaintiff, and Defendants would not be prejudiced given the early stages of this case with no discovery taken, and the pleadings still open.  Therefore, leave to amend the Complaint should be granted if the Court deems the pleadings insufficient to establish a *prima facie* case of personal jurisdiction.

## VI.  CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.


Dated:  October 19, 2020                               Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/ Kenneth Willard*_____

Kenneth Willard, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>*s/ Kenneth Willard*</u>

Kenneth Willard, Esq.