**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOSEPH GUGLIELMO, on behalf of himself and all others similarly situated, | : : | CASE NO. 1:20-cv-05376 |
| | : | |
| Plaintiffs, | : | JUDGE LEWIS J. LIMAN |
| | : | |
| v. | : | |
| | : | |
| JEGS AUTOMOTIVE, INC., | : | |
| | : | |
| Defendant. | : | |

**<u>REPLY MEMORANDUM IN SUPPORT OF</u>**
**<u>DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

I.    LAW AND ARGUMENT ...................................................................................... 1

    A.   The Court cannot conclude that personal jurisdiction exists because Plaintiff has failed to point to any evidence or plead any facts that permit even a reasonable inference that Defendant *actually transacts business in* the District. .............................1

    B.   The exercise of personal jurisdiction over JEGS would violate the Due Process Clause of the United States Constitution. ......................................................................10

    C.   Dismissal of Plaintiff's third claim (for declaratory judgment) is appropriate because it is redundant, and Plaintiff has abandoned the claim....................................15

    D.   Given the dismissal of Plaintiff's federal claim, the Court should decline to exercise supplemental jurisdiction over his state law claim. ...........................................16

    E.   Plaintiff's contingent request to amend his pleadings is an impermissible attempt to obtain an advisory opinion on how to plead his claims to which Plaintiff is not entitled..................................................................................................17

II.   CONCLUSION ...................................................................................................... 18

CERTIFICATE OF SERVICE .......................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Abdur-Raheem v. Selsky*, 806 F. Supp. 2d 628 (W.D.N.Y. 2011) ................................................. 17

*Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, (S.D.N.Y. Jan. 21, 2020)..................................................................................... 12, 13

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ...................................................... 4

*Brown v. Web.com Group, Inc.*, 57 F. Supp.3d 345 (S.D.N.Y. 2014)........................................... 11

*Buck Construction, LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858 (N.D.N.Y. Sept. 8, 2017),..................................................................... 11

*Camacho v. Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ............................................................................................. passim

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Group*, No. 15-cv-05488 (RJS), 2016 U.S. Dist. LEXIS 135941 (S.D.N.Y. Sept. 29, 2016)....................................................... 17

*Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583 (W.D.N.Y. 2011) .................................................... 17

*Diaz v. Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019)......................................................................................................................... 2

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015)................................................. 13

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)................. 14

*Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 6, 1999) ...................................................................................... 2

*Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 U.S. Dist. LEXIS 8265 (S.D.N.Y. Jan. 19, 2017)............................................................................................................... 3

*Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73 (2d Cir. 2011) ............................... 17

*Fortis Corporate Ins., S.A. v. M/V Cielo del Canada*, 320 F. Supp.2d 95 (S.D.N.Y. 2004).......... 4

*Girl Scouts of the United States v. Steir*, 102 F. App'x 217 (2d Cir. 2004) ................................... 9

*Horowitz v. Am. Int'l Group, Inc.*, No. 09 Civ. 7312 (PAC), 2010 U.S. Dist. LEXIS 103489 (S.D.N.Y. Sept. 30, 2010)................................................................................... 15

*In re Am. Express Co. Shareholder Litig.*, 840 F. Supp. 260 (S.D.N.Y. 1993) ........................... 16

*In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ 1691 (RJS), 2018 U.S. Dist. LEXIS 56897 (S.D.N.Y. Mar. 30, 2018) ...................................................................................... 17

*In re UBS Auction Rate Sec. Litig.*, Nos. 08 Civ. 2967 (LMM), 08-CV-3082, 08-CV-4352, & 08-CV-5251, 2010 U.S. Dist. LEXIS 59024 (S.D.N.Y. June 10, 2010) .................... 4

*Kleeberg v. Eber*, No. 16-CV-9517 (LAK) (KHP), 2020 U.S. Dist. LEXIS 142735 (S.D.N.Y. Aug. 10, 2020) ........................................................................................................ 15

*Liberty Sackets Harbor, LLC v. Vill. of Sackets Harbor*, No. 5:18-CV-0242 (GTS/TWD), 2018 U.S. Dist. LEXIS 163943 (N.D.N.Y. Sept. 25, 2018) ...................................................... 15

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)...................................... 10, 12, 13

*Marsalis v. Schachner*, No. 01 Civ. 10774 (DC), 2002 U.S. Dist. LEXIS 10157 (S.D.N.Y. June 6, 2002)........................................................................................ 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................. 13

*Morton v. Cty. of Erie*, 796 F. App'x 40 (2d Cir. 2019) ........................................................ 16

*Nelson v. Mass. Gen. Hosp.*, No. 04-CV-5382 (CM), 2007 U.S. Dist. LEXIS 70455 (S.D.N.Y. Sept. 20, 2007)................................................................................................ 3

*O'Brien v. Hackensack Univ. Med. Ctr.*, 305 A.D.2d 199, 760 N.Y.S.2d 425 (1st Dep't 2003) ...................................................................................................................... 9

*Oakley v. Dolan*, No. 17-cv-6903 (RN), 2020 U.S. Dist. LEXIS 28267 (S.D.N.Y. Feb. 19, 2020) ..................................................................................................................... 17

*Phoenix-Dolezal v. Ni*, No. 11 Civ. 3722 (LAK) (JLC), 2012 U.S. Dist. LEXIS 578 (S.D.N.Y. Jan. 17, 2012)................................................................................................ 4

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011) ............................................... 5

*Rothstein v. Auto Club South*, No. 15-cv-9391 (LAK), 2017 U.S. Dist. LEXIS 56981 (S.D.N.Y. Apr. 13, 2017)............................................................................................... 4

*Sullivan v. Ringling Coll. of Art & Design, Inc.*, No. 190CV-1302 (RA), 2019 U.S. Dist. LEXIS 209205 (S.D.N.Y. Dec. 4, 2019) ....................................................................... 14

*Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 U.S. Dist. LEXIS 176673 (S.D.N.Y. Dec. 21, 2016) ......................................................................................... 5

*Taylor v. Lenox Hill Hosp.*, 87 F. App'x 786 (2d Cir. 2004) ..................................................... 16

*Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334 (E.D.N.Y. 2013) ...................... 15

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 145 (2d Cir. 2001) ............... 10

*Walden v. Fiore*, 571 U.S. 277, 286, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)......................... 10

*Williams v. Mirabal*, No. 11 Civ. 366 (JMF), 2013 U.S. Dist. LEXIS 6676 (S.D.N.Y. Jan. 16, 2013) ................................................................................................................. 15

**Statutes**

N.Y.C. Administrative Code § 8-107 ....................................................................................... 15

**Other Authorities**

28 U.S.C. § 1367.................................................................................................................... 17

**Rules**

Fed. R. Evid. 201 ................................................................................................................... 3

<u>**REPLY MEMORANDUM IN SUPPORT OF**</u>
<u>**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)**</u>

Plaintiff Joseph Guglielmo has not presented any persuasive argument as to why his complaint should survive Defendant JEGS Automotive, Inc.'s motion to dismiss. In an attempt to establish the necessary *prima facie* showing of personal jurisdiction, Guglielmo offers the Court speculation and inferences stacked on inferences. Guglielmo's conclusory assertions are bereft of the requisite factual foundation the law requires. This deficiency and the uncontested redundancy of the declaratory judgment claim prompt the dismissal of the federal claims, and Guglielmo offers no basis whatsoever for why the Court should otherwise continue to exercise supplemental jurisdiction over the remaining state-law claim. These failures lead to only one conclusion; the Court should dismiss Guglielmo's complaint in its entirety.

## I.      LAW AND ARGUMENT

### A.      The Court cannot conclude that personal jurisdiction exists because Plaintiff has failed to point to any evidence or plead any facts that permit even a reasonable inference that Defendant *actually transacts business in* the District.

In its motion to dismiss, JEGS pointed out that Guglielmo failed to plead, because he cannot plead, that JEGS has any physical presence or operations in the State of New York. JEGS also explained how Guglielmo failed to plead any facts that permit a reasonable inference that JEGS actually transacts business in the District. Because Guglielmo's memorandum in opposition wholly fails to refute these dispositive points, dismissal is warranted.

The analytic chain leading to this conclusion is not complicated. As JEGS noted in its motion, a defendant "transacts business" in New York for purposes of the long-arm statute when it "purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." *Family Internet, Inc. v. Cybernex, Inc.*, No. 98

Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549, at *14 (S.D.N.Y. Oct. 6, 1999) (internal quotations omitted). It also is well-settled that "[o]perating a website that may be accessed from New York, without more, does not bring the operator within the jurisdiction of New York courts." *Camacho v. Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *12 (S.D.N.Y. Dec. 4, 2019). Rather, to establish personal jurisdiction, a plaintiff *must* make a *prima facie* showing "'some degree of commercial activity occurred in New York.'" *Id.* at *14 (quoting *Diaz v. Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177, at *7 (S.D.N.Y. June 4, 2019)).

In an attempt to meet his burden, Guglielmo asserts JEGS fulfills sufficient orders to New York customers to constitute a substantial amount of business within the District. It is significant, however, that Guglielmo makes this conclusory assertion thoughtlessly without a single fact to support it.

For example, Guglielmo fails to cite to a single *actual order* placed through the website from New York. Nor does Guglielmo cite to a single *actual sale* that occurred in New York. And, Guglielmo fails to cite to a single *actual delivery* to New York.

Instead of citing actual facts, Guglielmo offers the Court unreasonable inferences stacked upon slanted inferences. The Court should not be persuaded. Guglielmo states as "fact" that "as Defendant's website demonstrates, Defendant conducts over $300 million worth of business worldwide, including the State of New York." (Doc. No. 21 at 13.) But there are at least two problems with this statement that render it devoid of value in establishing personal jurisdiction over JEGS.

***First, the Court should not consider the website "evidence" upon which Guglielmo can rely.*** In his Complaint, Guglielmo pleads he visited JEGS's website "[o]n multiple occasions, the

last occurring in July of 2020." Doc. No. 1 ¶ 24. In his memorandum in opposition, however, Guglielmo asks the Court to take judicial notice of JEGS's website as it existed on October 16, 2020. *See* Doc. No. 21 at 8-10. Thus, Guglielmo is asking the Court to take judicial notice of later-in-time (October 2020) webpages to support personal jurisdiction existed when the Complaint was filed (on July 13, 2020). This difference in time—July 13, 2020, versus October 16, 2020—matters because "[w]hen deciding a motion to dismiss for lack of personal jurisdiction, the Court must consider defendants' contacts with the forum state at the time of plaintiffs' filing of the complaint." *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 U.S. Dist. LEXIS 8265, at *7 (S.D.N.Y. Jan. 19, 2017) (citing *Nelson v. Mass. Gen. Hosp.*, No. 04-CV-5382 (CM), 2007 U.S. Dist. LEXIS 70455, at *13 (S.D.N.Y. Sept. 20, 2007)).

Guglielmo does not, and cannot, offer any basis for the Court to believe the October 16, 2020 webpages are identical to the webpages that existed at the time of the purported facts giving rise to his Complaint, much less when he filed the Complaint. This is problematic for Guglielmo because he is asking the Court to recognize the October 2020 pages are the same as the July 2020 pages he allegedly visited. However, such a fact is not "generally known within the trial court's territorial jurisdiction" and cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1) and (2).

Citing the Rule 201 standards, another judicial officer in this District, when asked to take judicial notice of a later-in-time website, held that "it certainly cannot reasonably be said that anything that is on the AAA.com website now is precisely the same thing that was on it several years ago when the plaintiffs booked their hotel rooms. The Court may not, and will not, take judicial notice of the website contents." *Rothstein v. Auto Club South*, No. 15-cv-9391 (LAK),

2017 U.S. Dist. LEXIS 56981, at *5 (S.D.N.Y. Apr. 13, 2017). That same judicial officer characterized the judicial-notice argument as "entirely unpersuasive." *Id.* at *3.

Another judicial officer in this District similarly rejected taking judicial notice of later-in-time website pages. That judge explained the "current websites maintained by a defendant cannot be taken as controlling evidence of the facts that existed at an earlier date." *In re UBS Auction Rate Sec. Litig.*, Nos. 08 Civ. 2967 (LMM), 08-CV-3082, 08-CV-4352, & 08-CV-5251, 2010 U.S. Dist. LEXIS 59024, *49 (S.D.N.Y. June 10, 2010) (citing *Fortis Corporate Ins., S.A. v. M/V Cielo del Canada*, 320 F. Supp.2d 95, 98 (S.D.N.Y. 2004)). This reasoning applies here.

The question before the Court is whether personal jurisdiction existed on July 13, 2020, the date on which Guglielmo filed his Complaint. There is no basis for taking judicial notice of October (or now November) webpages to answer that question. This leaves Guglielmo in an untenable position because the simple fact that a website exists is not enough. It is settled law that "the fact that [a] website is accessible in New York does not, in itself, create a basis for personal jurisdiction over [a defendant]." *Phoenix-Dolezal v. Ni*, No. 11 Civ. 3722 (LAK) (JLC), 2012 U.S. Dist. LEXIS 578, at *20-21 n.11 (S.D.N.Y. Jan. 17, 2012) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)). The Court must go deeper and consider, if at all, the content of the pages offered for judicial notice and the purpose for which they are offered.

Even if the Court were to ignore the substantive time issue related to the exhibit webpages involved in Guglielmo's request for judicial notice, New York federal courts "have taken judicial notice of websites on motions to dismiss . . . [only] for the limited purpose of ascertaining an undisputed fact or the fact of the website's publication." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2011 U.S. Dist. LEXIS

4

51330, at *70 n.19 (E.D.N.Y. Jan. 4, 2011) (citing cases). Guglielmo, however, is *not* seeking to establish an undisputed fact or establish the existence of the exhibit webpages. Instead, he asks the Court to draw unwarranted inferences under the guise of judicial notice.

Guglielmo is making an improper request. Taking judicial notice of the sort requested here involves statements that "are not the type of readily ascertainable and undisputed facts that are normally subject to judicial notice." *Id.* at *71 n.19. In fact, Courts have declined to exercise judicial notice of a website when it would not establish the sufficient level of commercial activity needed to establish personal jurisdiction. *See Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 U.S. Dist. LEXIS 176673, at *12-13, & *15 n.6 (S.D.N.Y. Dec. 21, 2016).

***Second, even if the Court takes judicial notice of the exhibit website pages attached to Guglielmo's memorandum contra, these webpages do not establish JEGS has transacted any, much less sufficient, business in New York.*** The website makes general statements about aggregate worldwide business and offers tax information if a prospective sale were to involve any of the fifty states; but *nowhere* does this exhibit indicate JEGS ever received a single order from New York, made a single sale to a New York buyer, or made a single delivery to New York. Nor does *any* exhibit webpage evidence: negotiations between JEGS and any New York resident/entity; business meetings between JEGS and any New York resident/entity; or business letters sent or business phone calls made between JEGS and any New York resident/entity.

Simply stated, Guglielmo's overarching argument in his memorandum in opposition is that JEGS is so large the Court should assume JEGS conducts sufficient business in New York to establish personal jurisdiction. This requires the Court also to infer JEGS has transacted website business in New York and to infer the business is sufficient to establish personal jurisdiction. In

other words, one must guess that a successful company with a website accessible to New York *must* have resulted in sales within New York. Unfortunately for Guglielmo, this is not how the test for personal jurisdiction operates.

The law of personal jurisdiction does not endorse troll lawsuits simply because a company is of a certain size or does a certain amount of business worldwide. There must be sufficient business activity in the District, and Guglielmo has neither plead nor pointed to any facts whatsoever that suggest JEGS engaged in any degree of commercial activity in New York. The Court should reject such a fishing expedition and dismiss Guglielmo's Complaint.

Perhaps recognizing the fatal flaw in relying on the *company size + worldwide revenue = New York personal jurisdiction* argument, Guglielmo also asserts *his own conduct* establishes the requisite business activity needed to establish a *prima facie* case of personal jurisdiction. He proposes JEGS's website "could be said to fall in that middle spectrum of activity where interaction with New York web users is considered enough to confer personal jurisdiction given the level of information exchanged." Doc. No. 21 at 15.

Guglielmo's "middle-spectrum" argument misreads the effect of the case upon which he relies, *Camacho v. Vanderbilt University*, 2019 U.S. Dist. LEXIS 209202. In *Camacho*, another judicial officer in this District addressed a situation in which a visually impaired plaintiff based in New York unsuccessfully attempted to use a Tennessee university's website. *Id.* at *2-5. The plaintiff brought federal and state claims, and the university sought to dismiss for want of personal jurisdiction. *Id.* at *1. The *Camacho* court rejected the proposition that the university's participation in college recruiting events in New York created personal jurisdiction. *Id.* at *11. The court also rejected the theory that personal jurisdiction existed over the Tennessee university

because the college allowed New York students to pay their tuition through the website, explaining that online payments did not cause his inability to access the website. *Id.* at 10-11.

What caused the *Camacho* court to find personal jurisdiction was the degree of interactivity of the university's website. The court explained a spectrum exists with passive, information-only websites existed at one end (with no personal jurisdiction conferred) and with fully interactive websites that knowingly transmit goods and services to the forum state at the other end (with personal jurisdiction conferred). *Id.* at *13. In the middle of the spectrum exists interactive websites that permit the exchange of information between New York residents and the university, with the level and nature of the exchange a potential basis for personal jurisdiction. *Id.*

The *Camacho* court noted "[t]he Website's capacity to facilitate tuition payments online indicates that it may be used for commercial activity which in turn suggests the Website is fully interactive." *Id.* at *13-14. **But the court rejected the proposition that the mere capacity for such commercial activity provided a basis for personal jurisdiction.** The court explained that "while Plaintiff does contend that Defendant has students in New York and that Defendant's students might pay their tuition through the Website, he does not take the final, crucial step of alleging that New York students use the Website to pay their tuition." *Id.* at *14. This requirement of pleading the dispositive facts informs the instant case because Guglielmo failed to allege any facts suggesting anything other than capacity here—and *Camacho* teaches that capacity is not enough. Notably, the court explained that while it must construe the pleadings in the light most favorable to the plaintiff, **the court "may not premise _jurisdiction_ on favorable inferences drawn from them."** *Id.* at *14 (emphasis added).

What led the *Camacho* court to exercise personal jurisdiction was the fact the plaintiff was denied access to interactive portions of the website, such as a net price calculator, that would permit the exchange of information between the plaintiff and the university. *Id.* at *16. Because of such interactivity, the court looked at whether the university purposefully targeted New Yorkers with the website. *Id.* at *17. Construing the complaint in the light most favorable to the plaintiff, the court alleged the university used its website *at* recruiting events in New York to market the university to prospective students. *Id.* at *18. The court concluded this meant the university availed itself of the privilege of conducting activities in New York and intentionally brought the website within the state. *Id.* at *18-19.

This leads to three critical points.

First, *Camacho* is far more nuanced than Guglielmo's briefing presents. Even alleged mid-spectrum interactivity still requires coupling with greater conduct within the forum state to create personal jurisdiction. *Id.* at *17 ("When a website falls in the middle of the interactivity spectrum, the jurisdictional inquiry requires closer evaluation of its contacts with New York residents to determine if Defendant engaged in purposeful activity in New York." (single quotation marks omitted) and at *19 ("Defendant targets its website at New Yorkers by using the website to solicit applications during college fairs held in New York State. Coupling this allegation with the alleged interactivity of the Website, the Court concludes that New York's long-arm statute is satisfied.").

Second, the instant case is not like *Camacho* because there is no allegation JEGS used its website *at* events in New York (*e.g.*, trade shows) to market to prospective buyers. The dispositive missing link is any in-state use of the website by JEGS, any additional fact to be coupled with the alleged mid-spectrum interactivity. Without citing any supporting authority,

Guglielmo posits the posting of New York tax information is comparable business activity in New York, but such passive provision of information is wholly dissimilar to the active, purposeful in-state conduct of the sort involved in—and required by—*Camacho*.

Third, when deciding whether personal jurisdiction existed, *Camacho* expressly rejected the proposition that the university used both its website and, separately, its presence at recruiting events, to market to prospective students in New York. *Id.* at *18. This rejection of uncoupled facts bears repeating: The court recognized "a conclusory allegation that Defendant used its nationally-available website to solicit students in New York" and held this allegation was "not sufficient to establish personal jurisdiction." *Id.* at *19. Here, the factual allegations at best suggest JEGS has a nationally-available website which is available to potential New York buyers—but there is no factual allegation the website has been used by a New Yorker to transact business.

Guglielmo's conclusory allegations untethered to any actual fact suggesting actual transactions in New York are not enough. Again, as explained in *Camacho*, "[t]he Court must construe the pleadings in the light most favorable to the Plaintiff, but it may not premise jurisdiction on favorable inferences drawn from them." *Id.* at *14. The Court cannot assume the requisite business transactions occurred. This leaves, at best, mere solicitation for business by JEGS, and "[a]s New York law makes plain, the 'mere solicitation of business within the state does not constitute the transaction of business within the state' absent some other New York-directed activities." *Girl Scouts of the United States v. Steir*, 102 F. App'x 217, 219-20 (2d Cir. 2004) (quoting *O'Brien v. Hackensack Univ. Med. Ctr.*, 305 A.D.2d 199, 201, 760 N.Y.S.2d 425, 427 (1st Dep't 2003)).

9

There is no factual basis for the exercise of personal jurisdiction here. Dismissal is warranted.

**B.    The exercise of personal jurisdiction over JEGS would violate the Due Process Clause of the United States Constitution.**

As JEGS noted in its initial briefing, due process requires it has sufficient minimum contacts with the forum state such that this lawsuit does not offend traditional notions of fair play and substantial justice. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *8 (quoting *Licci*, 732 F.3d at 169); *see also Marsalis v. Schachner*, No. 01 Civ. 10774 (DC), 2002 U.S. Dist. LEXIS 10157, at *10 (S.D.N.Y. June 6, 2002) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 145, 152 (2d Cir. 2001)). When a defendant is hauled into court in a forum state based on its own affiliation with the state, there is no due process violation. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *8 (quoting *Walden v. Fiore*, 571 U.S. 277, 286, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)). In other words, JEGS's lawsuit-related conduct must create a substantial connection with the forum state to avoid a due process issue. *Walden v. Fiore*, 571 U.S. 277, 283-86, 134 S. Ct. 1115, 1121-23 (2014). Despite this settled law, Guglielmo offers this Court two dubious theories of why there is no due process violation here.

Guglielmo first argues JEGS engages in a substantial amount of online commercial activity with customers in New York. But as explained above, there is no fact before this Court suggesting this is true. As mentioned before, nowhere in the Complaint or in the webpage exhibits is there any fact indicating JEGS received even a single order from New York, made a single sale to a buyer from New York, or made a single delivery to New York. Nor does any paragraph of the Complaint or any portion of any exhibit evince negotiations between JEGS and any New York resident/entity, business meetings between JEGS and any New York

resident/entity, or business letters sent or business phone calls made between JEGS and any New York resident/entity.

Instead, citing JEGS's size and overall revenue, Guglielmo asks the Court to assume his speculation, as to significant contacts, must be true. Then inexplicably, Guglielmo directs the Court to a single case to support his "substantial business" theory, citing "similar circumstances" to the instant case. Doc. No. 21 at 27. That case, *Buck Construction, LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858 (N.D.N.Y. Sept. 8, 2017), does not present any circumstances similar to the instant case.

The problem with Guglielmo's logic is this; he presents distinguishable cases as evincing applicable holding. For example, the *Buck Construction* defendant *admitted* to $2 million in New York sales and nearly 2,000 individual shipments to New York. *See Id.* at *13. There are no such admissions here, which means there are no "similar circumstances." Absent this link, the due process analysis of *Buck Construction* is irrelevant to the instant case.[1] Despite the distinguishable circumstances, Guglielmo goes all-in on his argument; he fails to cite any other authority that presents facts actually similar to those found in the instant case. There is no comparable set of facts before the Court, and *Buck Construction* falls well-short of providing

---

[1] Guglielmo is at least consistent in his erroneous reliance on *Buck Construction* given he also earlier relied on the case as supporting authority in his argument that he has made a *prima facie* showing of business activity. *See* Doc. No. 21 at 19. The dissimilar facts render that case distinguishable from the facts here to determine whether jurisdiction exists and whether there is a due process violation.

Also worth mentioning is Guglielmo similarly relied on a second wholly distinguishable case in his "business activity" argument, *Brown v. Web.com Group, Inc.*, 57 F. Supp.3d 345 (S.D.N.Y. 2014). In that case, the defendant used its website to "raise[] a great deal of its gross revenue from New York customers." *Id.* at 358. Evidence before the *Brown* court indicated "New Yorkers constitute 6.24% of [the defendant's] global customers and 7.5% of its domestic customers." *Id.* at 352. There is no such similar evidence in the instant case. Thus, neither *Buck Construction* nor *Brown* are of any value in resolving the issues *sub judice*.

Guglielmo with enough to evade the due process violation he seeks to create. The Court should reject Guglielmo's substantial activity theory.

Guglielmo's next theory is that due process is satisfied even if JEGS's website is purely interactive. JEGS again notes nothing in the Complaint suggests the exercise of jurisdiction over it would be appropriate. JEGS is not incorporated in New York, it does not have its principal place of business there, and it does not operate any stores in New York. There is no fact plead suggesting anyone other than Guglielmo has ever accessed JEGS's website from New York. The only specific allegation regarding any contact with New York *is through Guglielmo*, a New York resident, and *his* access of the website. This is not enough in light of the Supreme Court's holding that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285, 134 S. Ct. at 1122.

Assuming arguendo the analysis could advance beyond this initial step and to the due-process step, Guglielmo again relies upon wholly inapplicable authority. He cites two cases in which the facts plead indicated the defendants selected and repeatedly used New York's banking system: *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 169 (2d Cir. 2013), and *Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, at *27 (S.D.N.Y. Jan. 21, 2020). *See* Doc. No. 21 at 28. In both cases, these factual allegations mattered because "the use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute if the defendant's use of the corresponding account was purposeful." *Licci*, 732 F.3d at 168.

Here, however, there simply is no such comparable factual allegation. There is no allegation that JEGS used a New York account once, much less "'dozens' of times" as in *Licci*, 732 F.3d at 168. There is no allegation that JEGS engaged in the use of a New York account

once, much less engaged in "'repeated use'" as in *Averbach*, 2020 U.S. Dist. LEXIS 10902, at *27. Accordingly, there is no basis to apply the due-process analysis of the distinguishable *Licci* and *Averbach* to the instant case. Potential use is not the same as actual use, and the due-process analysis of *Licci* and *Averbach* embraces only the latter—which means they are not instructive here.

One additional point regarding due process is warranted. In discussing fair play and substantial justice, Guglielmo seeks to prevail on whether the exercise of jurisdiction is reasonable under the circumstances by ignoring nearly every factor involved in the question. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *19-20 (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015)). To ascertain whether the exercise of jurisdiction is reasonable, the Court must consider:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*Id.* at *8 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). All of these factors are important because a defendant can defeat jurisdiction, even if minimum contacts exist, if the presence of other considerations would render jurisdiction unreasonable. *Id.* at *21 (quoting *Licci*, 732 F.3d at 173).

Guglielmo addresses the factors only obliquely, asserting modern communication and transportation offset any burden litigating this action in New York would impose on JEGS. This contention, culled from a pre-COVID pandemic case, outright ignores the difficulties faced in current litigation, particularly where travel is involved. Guglielmo also cites New York's interest in enforcing state law in regard to commercial activity conducted in New York. Even this

13

reasonable point—inapplicable here, given the lack of proof of requisite commercial activity—does not speak to the remaining factors.

Thus, the takeaway point is that both the totality and weight of the reasonableness factors favors JEGS. Again, there is no basis to conclude JEGS expected, or should reasonably have expected, any act it committed to have consequences in New York. *See Sullivan v. Ringling Coll. of Art & Design, Inc.*, No. 190CV-1302 (RA), 2019 U.S. Dist. LEXIS 209205, at *15 (S.D.N.Y. Dec. 4, 2019). As another judicial officer in this District has explained, "[f]or conduct to be 'reasonably foreseeable,' there must be 'evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market.'" *Id.* (quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008)). But Guglielmo failed to plead *any* facts that constitute evidence of a purposeful New York affiliation.

Additionally, the exercise of jurisdiction would impose substantial burdens on JEGS. For example, rather than litigating in a forum in which it reasonably anticipated potential lawsuits, like Ohio, JEGS would be forced to litigate in a forum in which it did not anticipate litigating. Even with advances in technology, the costs of litigating in New York, as opposed to Ohio, are substantially greater under ordinary conditions—and litigation is now far more complex and costly when conducted during a raging pandemic. The associated greater costs for travel and accommodations, much less the health risks involved, would likely necessitate greater than usual reliance upon JEGS's New York-based local counsel. The billing rates of local counsel are substantially higher than the rates of JEGS's counsel, which only compound the burden created by forcing JEGS to litigate in a forum it should not be in.

The exercise of personal jurisdiction would not comport with due process.

**C.    Dismissal of Plaintiff's third claim (for declaratory judgment) is appropriate because it is redundant, and Plaintiff has abandoned the claim.**

Guglielmo's third claim seeks a declaration that JEGS failed to comply with the ADA and N.Y.C. Administrative Code § 8-107. Doc. No. 1 ¶ 70. While moving to dismiss this lawsuit, JEGS explained that because this claim targets the same rights and obligations at issue in claim one (ADA) and claim two (N.Y.C.), it is redundant. To support its argument, JEGS presented law that such a redundant declaratory judgment claim warrants dismissal. *See Kleeberg v. Eber*, No. 16-CV-9517 (LAK) (KHP), 2020 U.S. Dist. LEXIS 142735, at *52 (S.D.N.Y. Aug. 10, 2020); *Horowitz v. Am. Int'l Group, Inc.*, No. 09 Civ. 7312 (PAC), 2010 U.S. Dist. LEXIS 103489, at *33 (S.D.N.Y. Sept. 30, 2010).

Guglielmo did not respond to this redundancy argument. Some courts have recognized that a plaintiff's failure to respond to an argument raised in a motion to dismiss lightens the defendant's burden to obtain dismissal based on that argument. *See Liberty Sackets Harbor, LLC v. Vill. of Sackets Harbor*, No. 5:18-CV-0242 (GTS/TWD), 2018 U.S. Dist. LEXIS 163943, at *29-30 (N.D.N.Y. Sept. 25, 2018). Other courts have recognized "[a] court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) (quoting *Williams v. Mirabal*, No. 11 Civ. 366 (JMF), 2013 U.S. Dist. LEXIS 6676, at *2 (S.D.N.Y. Jan. 16, 2013)).

Whether due to abandonment or as a result of redundancy, the Court should dismiss Guglielmo's declaratory judgment claim.

**D.**      **Given the dismissal of Plaintiff's federal claim, the Court should decline to exercise supplemental jurisdiction over his state law claim.**

With its motion to dismiss, JEGS explained why the Court should decline to exercise supplemental jurisdiction over Guglielmo's second cause of action asserting a state law claim under the New York City Administrative Code, once it dismisses his federal law claim. *See Taylor v. Lenox Hill Hosp.*, 87 F. App'x 786, 787-88 (2d Cir. 2004) ("It is well settled where . . . plaintiff's federal claims were properly dismissed prior to trial, the district court has discretionary authority to dismiss the remaining state claims."); *In re Am. Express Co. Shareholder Litig.*, 840 F. Supp. 260, 270 (S.D.N.Y. 1993) ("[D]ismissal of pendent state law claims is particularly appropriate where all federal claims have been eliminated before trial."). JEGS also reminded the Court that determining whether to exercise supplemental jurisdiction involved consideration of "judicial economy, convenience, fairness, and comity." *Morton v. Cty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019). JEGS briefed why none of these factors support the exercise of supplemental jurisdiction here.

Guglielmo does not answer this argument either. Instead, he *assumes the Court will retain the federal component of this action* and focuses on why the Court should then exercise concurrent supplemental jurisdiction over the state law components. This misses the point; Guglielmo is responding to an argument that was not made.

JEGS made clear that when the Court dismisses the federal component of this case, the Court then should decline to exercise supplemental jurisdiction. Anything else would be (1) incorrect under a personal jurisdiction/due process analysis and, separately, (2) unjust in light of the fact the exercise of supplemental jurisdiction does not promote judicial economy, convenience, fairness, and comity. Guglielmo's silence on these factors is a telling, implicit concession.

16

The Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

### E.   Plaintiff's contingent request to amend his pleadings is an impermissible attempt to obtain an advisory opinion on how to plead his claims to which Plaintiff is not entitled.

Recognizing the deficiencies in his Complaint and his arguments, Guglielmo closes his memorandum in opposition with an outrageous request – if the Court is inclined to dismiss this case, the Court should allow him to file an amended complaint. *See* Doc. No. 21 at 30. In other words, Guglielmo wants this Court to issue an advisory opinion on how he should better plead in order to avoid dismissal.

Numerous courts, including several in this District, have soundly rejected such contingent requests. *See, e.g., Oakley v. Dolan*, No. 17-cv-6903 (RN), 2020 U.S. Dist. LEXIS 28267, at *59-52 (S.D.N.Y. Feb. 19, 2020); *Cinema Vill. Cinemart, Inc. v. Regal Entm't Group*, No. 15-cv-05488 (RJS), 2016 U.S. Dist. LEXIS 135941, at *24-26 (S.D.N.Y. Sept. 29, 2016); *Abdur-Raheem v. Selsky*, 806 F. Supp. 2d 628, 640-41 (W.D.N.Y. 2011); *Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583, 600-01 (W.D.N.Y. 2011).

Moreover, "the Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading." *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ 1691 (RJS), 2018 U.S. Dist. LEXIS 56897, at *46-47 (S.D.N.Y. Mar. 30, 2018). *See also Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011). This is exactly the type of throwaway request found here; Guglielmo simply wasted more than one sentence making it.

The Court should deny the perfunctory request for leave to amend.

## II.    CONCLUSION

Personal jurisdiction over JEGS does not exist in this case, and exercising such jurisdiction would violate the Due Process Clause of the United States Constitution. Moreover, Guglielmo's abandoned cause of action for declaratory judgment is redundant and therefore subject to dismissal. Last, given the requisite dismissal of the federal claim, precedent supports this Court not exercising supplemental jurisdiction over Guglielmo's state law claim.

The Court should dismiss Guglielmo's complaint in its entirety.

Dated: November 13, 2020

Respectfully submitted,

**ISAAC WILES BURKHOLDER
& TEETOR, LLC**

*/s/ Brian M. Zets*
Brian M. Zets (OH# 0066544)
(admitted *pro hac vice*)
Two Miranova Place, Suite 700
Columbus, Ohio 43215
TEL:   (614) 221-2121
FAX:   (614) 365-9516
bzets@isaacwiles.com
*Counsel for Defendant*

AND

**STINSON, LLP**

*/s/ Kieran M. Corcoran*
Kieran M. Corcoran (KC4935)
1325 Avenue of the Americas
27th Floor
New York, New York 10019
kieran.corcoran@stinson.com
TEL:   212-763-8491
FAX:   212-763-8304
*Co-Counsel for Defendant JEGS Automotive, Inc.*

18

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, a copy of the foregoing **Reply Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)** was filed electronically.  Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Brian M. Zets*
Brian M. Zets (OH#0066544)